**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| In re: Teflon Products Liability Litigation | MDL No. 1733 |
|---|---|
| This Document Relates to All Actions | 4:06-md-01733-REL-CFB |

**DUPONT'S POST-HEARING BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATIONS**

In a day and a half of hearing, plaintiffs presented nothing to alter the conclusion that none of their 22 proposed classes may be certified. Plaintiffs offered no way around the ascertainability problems that plague their proposed classes, the many ways in which the named plaintiffs are atypical and inadequate, the myriad individual issues that make it impossible to certify the proposed classes, and the fact that class certifications would saddle this Court and the transferor courts around the country with hopelessly unmanageable cases.

1.  **Ascertainability**

Class membership must be "'capable of ascertainment under some objective standard,'" *Liles v. American Corrective Counseling Servs.*, 231 F.R.D. 565, 571 (S.D. Iowa 2005), "so that it is administratively feasible for the court to determine whether a particular individual is a member." *Dumas v. Albers Med., Inc.*, 2005 WL 2172030, *5 (W.D. Mo. Sept. 7, 2005).

Despite multiple attempts to formulate class definitions, plaintiffs still have come up with no workable way to answer four questions that would define class membership: (i) whether each item of cookware contains a DuPont nonstick coating; (ii) when each item of cookware was purchased and whether it falls within the applicable statutes of limitations or repose; (iii) whether the purchase occurred in the forum state for each proposed class; and (iv) whether each item of cookware was purchased or rather obtained in some other fashion. Each of these questions raises a host of individual issues specific to each potential class member.

<u>Product identification</u>. It is rarely possible to determine whether a pan has a DuPont nonstick coating or a coating made by one of DuPont's competitors. *See* DuPont Mem. 15-33.[1] Virtually no consumer retains the packaging that in some instances might describe the make of

---

[1] At the hearing, plaintiffs' counsel suggested, based on a survey of 18 retailers, that two-thirds of nonstick pans have a DuPont coating. In fact, the record shows that DuPont's market share is under 50%. *See* DuPont Mem. 20.

1

non-stick coating; the named plaintiffs produced packaging identifying a DuPont coating for two of their approximately 600 pieces of cookware. *Id.* at 24. To have any chance of identifying the coating on a pan without packaging, one would have to know the specific brand and line of cookware, the date of the pan's manufacture, and whether that line was made exclusively with DuPont coatings on that date. Such information will almost never be available and, even when it is available, is often inconclusive. After enormous effort by plaintiffs' counsel and DuPont and extensive third-party discovery, only 5% of the named plaintiffs' own pans could be identified as having a DuPont coating. *Id.* at 21-22. Having already tried and come up short, there is no basis for counsel to speculate that still more third-party discovery might improve the situation.[2]

Plaintiffs' recent proposal for subclasses does not help. A subclass must still satisfy all the requirements of Rule 23. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002). Here, membership in the proposed subclasses, like the originally proposed classes, would depend on consumers' memories of labels, when even the named plaintiffs' memories are often insufficient (they have no idea who made a pan) or incorrect (including "memories" of DuPont logos on packages for pans known not to have a DuPont coating). DuPont Mem. 24-28. Rule 23 does not permit certification of such unworkable classes defined with reference to little more than each potential class member's say-so. *See In re PPA Prods. Liab. Litig.*, 214 F.R.D. 614, 617-18 (W.D. Wash. 2003) (refusing to certify class that depended on the unverifiable identification of a product ingredient based on the "vagaries of memory").

Among the many problems with the proposed subclasses, subclass 1 relies on consumers' recollection of the labels that came with their cookware. While subclass 2 names particular

---

[2]   "Given the plaintiffs' burden, a court cannot rely on assurances of counsel" that problems with class certification "can be overcome" at some later time. *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996); *see*, *e.g.*, *Liles*, 231 F.R.D. at 572 (court could not certify class based on argument that unproduced documents might make classes ascertainable).

2

cookware lines, it includes lines made with non-DuPont coatings and, in the best-case scenario, would still require individualized proof of the brand, line, and date of manufacture for each item of cookware. *See* Hr'g Tr. 81-94, 301-02. Proposed subclass 3 adds in consumers with no evidence of any kind that their cookware has a DuPont coating. And on top of everything else, plaintiffs' Exhibit 61A purports to identify representatives for each state subclass, but it puts plaintiffs in subclasses based on testimony that their pans do not have a DuPont coating, *see id.* at 79-80, and it fails to identify any representative for many subclasses.[3]

Time of purchase. Plaintiffs' class definitions continue to refer to cookware purchased "within the applicable statute of limitation or repose." This means that class membership would depend, first, on the applicable limitations period under relevant law and, second, on when each item of cookware was purchased. Again, the named plaintiffs demonstrate the impracticability of this inquiry. They did not produce objective evidence of the date of purchase for even one of their cookware items, and in many instances they could not even guess. DuPont Mem. 29.

Plaintiffs' reliance on a discovery rule only compounds the problem. It requires a further individual inquiry for all potential class members into what they actually knew or should have known when they purchased each cookware item. The named plaintiffs' testimony demonstrates the wide variability in consumers' knowledge at different points in time about the claimed risks of nonstick cookware. *Id.* at 34-35, 52; *see*, *e.g.*, *Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 154 (S.D. Iowa 2001) ("inquiry notice" standard required individual inquiries); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 687-88 (D. Kan. 2007).

---

[3]   Exhibit A to this brief is the list of subclasses without representatives that DuPont provided to the Court on October 15. It was plaintiffs' burden to show that every subclass is represented by at least one named plaintiff who is a member of the subclass and satisfies all of the requirements of Rule 23(a). *See Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985) ("representatives . . . must be members of the subclasses they seek to represent").

3

Place of purchase. Plaintiffs' class definitions also require that the members of each class have purchased their cookware within a particular state. Objective proof of the location of purchase is almost always missing. The named plaintiffs could not recall the state where they purchased their cookware almost one-third of the time. DuPont Mem. 36.

Fact of purchase. Plaintiffs' counsel said at the hearing that they will now limit the classes to consumers who purchased their own cookware, excluding, for example, cookware obtained as a gift. But the Cookware Forms for each item of plaintiffs' cookware (DuPont Ex. 10) show that a large number were not purchased. *See*, *e.g.*, Cookware Items 138 ("out-of-the-blue waffle maker"), 148 ("inherited" from fiancée), 160 (gift). For the same reasons that consumers cannot provide reliable evidence of when or where they purchased cookware, there is no workable way to determine whether a consumer actually purchased an item of cookware.

### 2. Rule 23(a): Commonality and typicality

The great differences in the facts underlying the claims of each proposed class representative—and, to an exponentially greater degree, the claims of absent class members—mean that the named plaintiffs cannot satisfy the Rule 23(a) commonality and typicality requirements. Each class member's claims turn on, for example, what advertisements and other information they were exposed to, when and why they made purchase decisions, and the state of general scientific knowledge and DuPont's knowledge at the time of each purchase decision. DuPont Mem. 36-39; *see Mahoney*, 204 F.R.D. at 154 (no typicality when "proof can only come from a case-by-case analysis of each Class member's exposure to defendant's advertising").

In addition, the unrebutted expert testimony of Dr. Michael Mazis demonstrates that consumers would respond in vastly different ways to the information that plaintiffs say was misrepresented or not properly disclosed. *See* DuPont Mem. 59-61; DuPont Ex. 46. The named

plaintiffs' testimony bears this out, including Ms. Triolo's testimony that family members kept using nonstick cookware after she informed them of the supposed risks, Ms. Finol's testimony that she still uses nonstick cookware on high heat, and Ms. Ditto's testimony that she intends to purchase nonstick cookware again. DuPont Mem. 61-63; *see Mahoney*, 204 F.R.D. at 154 (no typicality in case alleging concealment of risks of smoking when some plaintiffs "may have started smoking and continued to smoke even if full disclosures had been made").

### 3. Rule 23(a): Claim splitting

The central allegation underlying all of plaintiffs' claims is that cookware made with DuPont nonstick coatings is unsafe for normal consumer use. If this allegation were true (although it is not) and any consumer suffered a personal injury, that claim would arise from the same "common nucleus of operative facts" as plaintiffs' fraud-based claims. Hr'g Tr. 105. Indeed, the class plaintiffs brought medical monitoring claims before abandoning them, and they are still pursuing claims for negligence and negligent design in many states. *See* Unified Compl. ¶¶ 140-43, 181-87 (DuPont Ex. 24). Plaintiffs' counsel dropped the medical monitoring claims to improve their cases for certification. *See* Hr'g Tr. 239. That decision was made without consulting class representatives, some of whom wanted to pursue those claims. *Id.* at 146-47.

Courts in this Circuit and elsewhere have repeatedly held that the adequacy requirement bars certification when class representatives or class counsel are willing to forfeit claims of absent class members. *See* DuPont Mem. 39-40 & n.24. Contrary to plaintiffs' arguments, absent class members do not enjoy blanket protection from *res judicata*, and there is no guarantee that a later court in a different jurisdiction would permit absent class members to pursue related claims. *See*, *e.g.*, *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 57-58 (1st Cir. 2004) (*res judicata* applied to claims of absent class members related to claims asserted

5

in prior class action).  As the court held in *Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 550-51 (D. Minn. 1999), even the risk that a subsequent court would find absent class members' claims barred as *res judicata* means that a class cannot be certified.

### 4. Rule 23(a): Adequacy of the proposed class representatives

Named plaintiffs are employees at class counsel's law firms, are involved in romantic or business relationships with lawyers at those firms, or are close friends of class counsel or their spouses.  *See* DuPont Mem. 43-47.  Such relationships compromise the named plaintiffs' ability to fulfill their obligation to represent the interests of the millions of consumers who would be members of the proposed classes.  *See*, *e.g.*, *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90-91 (7th Cir. 1977).

Plaintiffs argued at the hearing that with so many lawyers involved, class counsel will be able to resist individual class representatives and impose the lawyers' will over any plaintiff's views about the conduct of the litigation.  *See* Hr'g Tr. 110-11.  Plaintiffs have it backward.  The concern is not that plaintiffs might make decisions on behalf of the classes that are against the interests of their lawyers.  The problem is that the named plaintiffs cannot reasonably be expected to make objective decisions in the interest of the classes rather than for the benefit of their employers, significant others, business associates, and friends who serve as class counsel.

### 5. Rule 23(b)(3): Predominance

DuPont's brief lays out why any supposedly "common issues" in these cases would be overwhelmed by individual issues such as, among others, (i) product identification; (ii) which alleged misrepresentations, if any, each consumer heard or saw; (iii) the state of each consumer's knowledge and DuPont's knowledge at the time of each purchase decision; (iv) the relevant differences among items of cookware and individual consumers' cooking practices; (v) how, if at

6

all, each individual consumer would have acted differently with different information; (vi) limitations defenses that apply to each class member; (vii) whether each class member suffered an actual injury; and, if so, (viii) the amount of each class member's damages for each item of cookware. DuPont Mem. 50-68. Without repeating all of DuPont's arguments, a few points bear emphasis and clarification in light of the positions that plaintiffs took at the hearing.

First, plaintiffs bear the heavy burden of demonstrating how the elements of each of their claims for relief could be proved at trial on a class-wide basis using common proof. *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005). Plaintiffs have not even tried. Instead they merely assert, incorrectly and irrelevantly, that none of their causes of action requires a showing of reliance. In fact, plaintiffs assert numerous causes of action that include a reliance element.[4] More fundamentally, even when a cause of action does not contain an express reliance element, the required showings of causation and fact of injury based on alleged misrepresentations or omissions raise similarly individualized questions that likewise defeat class certification. *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 436-37 (C.D. Cal. 2007) (California Consumer Legal Remedies Act and Unfair Competition Law); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005) (Illinois unjust enrichment); *see also In re St. Jude Med., Inc.*, 522 F.3d 836, 839-40 (8th Cir. 2008); DuPont Mem. 63-64.[5]

---

[4]   *See, e.g.*, *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. 2004) (Arizona consumer fraud); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221-25 (3d Cir. 2008) (Pennsylvania consumer fraud); *Gross v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 696 A.2d 793, 796-97 (N.J. Super. 1997) (New Jersey fraud and negligent misrepresentation).

[5]   At the hearing, plaintiffs cited *Mooney v. Allianz Life Ins. Co. of N. Am.*, 2008 WL 2952055 (D. Minn. July 28, 2008). As with many of plaintiffs' authorities, *Mooney* says little about this case, because it involved a set of identical alleged misrepresentations made to every class member. *Mooney*, 2008 WL 2952055 at *3; *see* DuPont Mem. 54 n.37.

Plaintiffs' reliance at the hearing on *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004), is also misplaced. *Warfarin* concerned a settlement class (which does not raise

7

Second, plaintiffs cannot avoid the authorities cited by DuPont with the claim that, as product liability and personal injury cases, they are off-point. The same legal principles guide all cases under Rule 23. And, in fact, the leading authorities that require denial of plaintiffs' motion involved claims closely analogous to those at issue here. *See*, *e.g.*, *St. Jude*, 522 F.3d at 837-88 (consumer fraud and false advertising); *Mahoney*, 204 F.R.D. at 152 ("fraudulent concealment or nondisclosure" and "fraudulent misrepresentation"); *Oshana*, 225 F.R.D. at 577 (consumer fraud and unjust enrichment).

Third, plaintiffs' attempt to recharacterize their cases as involving only omissions does not assist them. Virtually every filing by plaintiffs, from their complaints to their class certification briefs, contains allegations of supposed misrepresentations by DuPont, in contexts ranging from DuPont's web site to mass media advertising. *See*, *e.g.*, Unified Compl. ¶¶ 1, 22-28, 51-53, 70, 82 (DuPont Ex. 24); Pls.' Mem. of Law in Support of Mot. for Class Cert. at 1 (Dkt. 467) (cases "arise from," among other things, "representations to the public about Teflon® and Teflon® coated cookware in advertising and other media"). And even with respect to omissions, issues of causation, fact of injury, and damages still raise the same complex, individual issues as misrepresentation claims, especially when, as here, various class members will have been exposed to a wide variety of relevant information about cookware safety from DuPont, cookware manufacturers and retailers, and mass media sources. *Oshana*, 225 F.R.D. at 586; *see*, *e.g.*, DuPont Exs. 31 (DuPont consumer brochures), 32 (DuPont web site).

---

the same manageability issues as a litigation class) in a case asserting antitrust violations alleged to have given the defendant the power to maintain supra-competitive pricing across the entire relevant market over a short time period, ostensibly affecting all market participants in the same way. *Id.* at 528. *Warfarin* thus did not implicate the same highly individual issues that defeat plaintiffs' motion for class certifications here.

Fourth, despite the Court's admonition in its July 11, 2008 Order, plaintiffs still have not explained how they propose either to establish the fact of injury or to calculate damages for individual consumers with class-wide proof. Dr. Mazis' testimony lends no support to plaintiffs' suggested "price drop" theory of damages. The unrebutted declaration and testimony of the only expert economist to testify in this matter, Dr. Edward Snyder, is that plaintiffs' approach is unsound as a matter of economics and would not work. DuPont Mem. 65-68.[6]

Finally, plaintiffs are wrong to propose that the fact of injury and amount of damages for individual class members could be determined with some unspecified system of summary administrative proceedings. Even under plaintiffs' "price drop" theory, there is no way to ascertain the damages corresponding to a piece of cookware without knowing what it cost. DuPont and plaintiffs have asserted their right to jury trials, which includes a jury determination of causation, fact of injury, and amount of damages for each class member. This undermines any supposed efficiencies from class proceedings. Indeed, the Seventh Amendment prohibits asking a second jury to determine whether a consumer was injured and the amount of damages when that means re-examining, for example, factual questions about causation and injury that a first jury would have already considered in a class trial. *See*, *e.g.*, *Castano*, 84 F.3d at 750-51.

### 6. Rule 23(b)(2): Injunctive relief classes

Plaintiffs fare no better with their requests that certain of their proposed classes be certified as Rule 23(b)(2) injunctive relief classes. *See* DuPont Mem. 73-74. "Because 'unnamed members are bound by the action without the opportunity to opt out' of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *In*

---

[6] Dr. Snyder's testimony and the other depositions played at the hearing are submitted as Exhibit B. The Court's function requires it to consider the record, including expert testimony, to evaluate the viability of trying plaintiffs' claims on a class-wide basis with common proof of the elements of their claims and of DuPont's defenses. *See Blades*, 400 F.3d at 566-67, 575.

9

*re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005); *see also id.* at 1122 (Rule 23(b)(2) remedies "group, as opposed to individual injuries" of class members "generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait").

Plaintiffs also cannot show that, in those states where they request Rule 23(b)(2) certification, they seek primarily injunctive relief and their claims for damages are merely "incidental" (even though their lawyers seek certification of the same claims as Rule 23(b)(3) damages classes in other states). The Eighth Circuit has held that Rule 23(b)(2) certification is improper when, as here, plaintiffs cannot demonstrate that they would have sued for injunctive relief alone, "'even in the absence of a claim for damages.'" *St. Jude*, 425 F.3d at 1122.

### 7. Manageability

Manageability problems make class certifications impermissible in these cases under any part of Rule 23. Plaintiffs have offered no plan for how they intend to provide class notice to potential class members in all fifty states plus any number of foreign countries. They say nothing about how trial courts could conduct class proceedings that would permit the fair adjudication of the highly individual issues that permeate these cases, such as product identification; statues of limitations; causation and injury (which depend on, for example, what individual class members knew and how they actually acted and would have acted with different information); and the calculation of damages based on the unknowable prices that class members paid for millions of pieces of cookware over a period of decades at locations across the country.

## CONCLUSION

These cases should not be allowed to proceed as class actions for further pretrial proceedings in this Court and potentially for trial in this Court and the transferor courts. The Court should deny plaintiffs' motion for class certifications.

November 4, 2008                                        Respectfully submitted,

                                              /s/

| | |
|---|---|
| John K. Sherk | Philip S. Beck |
| Andrew D. Carpenter | Adam L. Hoeflich |
| SHOOK HARDY & BACON LLP | Sean W. Gallagher |
| 2555 Grand Boulevard | Carolyn J. Frantz |
| Kansas City, Missouri 64108 | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP |
| Telephone: (816) 474-6550 | 54 West Hubbard Street, Suite 300 |
| Fax: (816) 421-5547 | Chicago, Illinois 60654 |
| jsherk@shb.com | Telephone: (312) 494-4400 |
| acarpenter@shb.com | Fax: (312) 494-4440 |
| | philip.beck@bartlit-beck.com |
| Robert L. Fanter | adam.hoeflich@bartlit-beck.com |
| John H. Moorlach | sean.gallagher@bartlit-beck.com |
| WHITFIELD & EDDY PLC | carolyn.frantz@bartlit-beck.com |
| 317 Sixth Avenue, Suite 1200 | |
| Des Moines, Iowa 50309 | Kaspar J. Stoffelmayr |
| Telephone: (515) 288-6041 | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP |
| Fax: (515) 246-1474 | 1899 Wynkoop Street, 8th Floor |
| fanter@whitfieldlaw.com | Denver, Colorado 80202 |
| moorlach@whitfieldlaw.com | Telephone: (303) 592-3100 |
| | Fax: (303) 592-3140 |
| | kaspar.stoffelmayr@bartlit-beck.com |

                          Counsel for Defendant
                    E.I. du Pont de Nemours and Company

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DuPont's Post-Hearing Brief in Opposition to Plaintiffs' Motions for Class Certifications has been furnished via Electronic Mail and Federal Express for overnight delivery to the parties listed below this 4th day of November, 2008.

Alan J. Kluger
Steve I. Silverman
Kluger Peretz Kaplan & Berlin, PL
201 South Biscayne Blvd, 17th Floor
Miami, Florida 33131
akluger@kpkb.com
ssilverman@kpkb.com

Kimberley Baer
Wandro & Baer, PC
2501 Grand Avenue, Suite B
Des Moines, IA 50312
kbaer@2501grand.com

        /s/
Kaspar J. Stoffelmayr