**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: Teflon Products Liability Litigation | ) | MDL No. 1733 |
| | ) | |
| | ) | Case: 4:06-md-01733-REL-CFB |
| | ) | |
| | ) | Judge Ronald E. Longstaff |
| | ) | |
| This Document Relations to All Actions | ) | Magistrate Judge Celeste F. Bremer |
| | ) | |

**PLAINTIFFS' POST-HEARING MEMORANDUM IN SUPPORT OF
<u>PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION</u>**

Respectfully submitted,

*On behalf of counsel in all transferor states:*

| | |
|---|---|
| WANDRO & BAER, P.C. | KLUGER, PERETZ, KAPLAN & BERLIN, P.L. |
| *Plaintiffs' Liaison Counsel* | *Plaintiffs' Lead Counsel* |
| 2501 Grand Avenue, Suite B | Alan J. Kluger, Esq. |
| Des Moines, Iowa 50312 | Steve I. Silverman, Esq. |
| Telephone: (515) 281-1475 | Stuart R. Silver, Esq. |
| Facsimile: (515) 281-1474 | 201 South Biscayne Boulevard, 17th Floor |
| | Miami, Florida 33131 |
| | Telephone: (305) 379-9000 |
| | Facsimile: (305) 379-3428 |
| | |
| By: /s/ Kimberley K. Baer | By: /s/ Steve I. Silverman |
|     Kimberley K. Baer, Esq. |     Steve I. Silverman, Esq. |

This memorandum addresses certain issues raised by the Court and corrects DuPont's mischaracterizations at the October 14-15 class certification hearing (the "Hearing"). Plaintiffs have demonstrated that *on a state by state basis*, Rule 23 has been satisfied for each action transferred to this MDL.[1] *See generally* Ex. A hereto (demonstrating adequacy of plaintiffs by state); Ex. 65 to Plaintiffs' Reply Memorandum ("Plaintiffs' Reply") (summarizing the law of each jurisdiction); Ex. B hereto, submitted to the Court at oral argument (demonstrating that claims pled have been previously certified); and Ex. C hereto, discussed at Section C.2., *infra*.

A. **DuPont Relies On Inapplicable Case Law.**

Plaintiffs seek to certify non-personal injury consumer claims based on DuPont's fraudulent concealment. Yet at the Hearing and in its Memorandum, DuPont relied on personal injury, products liability and smokers' cases -- including nationwide class actions which require the application of various states' laws to a single class -- all of which involve a host of individual issues not involved here. *See* Hearing Tr. at 254-63. As explained at the Hearing, DuPont's cases are clearly distinguishable and the Court should instead apply the law in the consumer fraud-based cases[2] discussed by Plaintiffs during the Hearing and in their briefs. *Id.*

B. **Plaintiffs' Claims Can Be Certified Under Rule 23(b)(2).**

In addition to the relief sought under Rule 23(b)(3), Plaintiffs also seek 23(b)(2) certification in certain states. *See* Plaintiffs' Initial Memo. at 38-40; Plaintiffs' Reply at 71-74, and Plaintiffs' Amendment to Class Certification Motion. Importantly, under Rule 23(b)(2), Plaintiffs need not establish predominance of common claims nor superiority of class treatment,

---

[1] Accordingly, any purported infirmities with regards to a proposed class representative in one state have *no bearing whatsoever* on the Rule 23 analysis for another state.

[2] *See*, *e.g.*, *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004); *In re: Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283 (3rd Cir. 1998); *Bobbitt v. Acad. of Court Reporting, Inc.*, 2008 WL 2558019 (E.D. Mich. June 25, 2008); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1 (D.D.C. 2002); *Mick v. Level Propane Gases, Inc.*, 203 F.R.D. 324 (S.D. Ohio 2001); *Tylka v. Gerber Products Co.*, 178 F.R.D. 493 (N.D. Ill. 1998).

1

which are required under Rule 23(b)(3).  Rather, under Rule 23(b)(2), plaintiffs must seek relief which is predominantly injunctive or declaratory, and allege that defendants acted or refused to act on grounds generally applicable to the class.  *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001); *see also Barefield v. Chevron, U.S.A., Inc.*, 1988 WL 188433 (N.D. Cal. December 6, 1988) (claims must be "cohesive" or "homogenous").  Such a showing is made when the defendant's conduct constitutes a pattern of activity.  *Thomas*, 201 F.R.D. at 397. *The fact that damages are sought in addition to the prayer for injunctive relief does not affect certification of the class.  DeBoer v. Mellon Mortgage Company,* 64 F.3d 1171, 1175 (8th Cir. 1995).  Plaintiffs' claims readily satisfy the standard for certification under Rule 23(b)(2).

**C.      Plaintiffs' Proposed Classes Are Precisely Defined And Adequately Represented.**

Exhibit D contains Plaintiffs' modified class definitions submitted at the Hearing.

**1.      Plaintiffs' Proposed Classes Are Ascertainable.**

DuPont argues that each individual plaintiff may not be able to prove membership in a sub-class.  Ascertainability, however, relates to whether the class can be identified, not whether each putative class member can prove that she is a member of the class.  *See*, *e.g.*, *Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641, 644-45 (N.D. Ill. 2006); *Keepseagle v. Veneman*, 2001 WL 3467944, at *7 (D.D.C. December 12, 2001).[3]

---

[3]   During the Hearing, DuPont attempted to distinguish Plaintiffs' cases supporting the argument that the proposed classes are ascertainable on the basis that Plaintiffs' cases purportedly involved situations where records to confirm an individual's membership in the class were readily available.  DuPont's argument is incorrect.  The availability of documentary evidence reflecting individuals' membership in the class is not a prerequisite to class certification, and indeed is not an appropriate consideration at the class certification stage.  *See*, *e.g.*, *Fournigault*, 234 F.R.D. at 644-45 (N.D. Ill. 2006) (*rejecting defendant's argument* that class was not ascertainable because neither plaintiff nor defendant had records necessary to prove individuals' membership in class; court stated that anticipated issue of proof was not relevant to a showing of definiteness, and "[t]he parties should not have to delve into the merits of the case to determine membership in the class."); *Keepseagle*, 2001 WL 3467944, at *7(*rejecting defendant's argument* that "farmers who have 'filed' orally, or whose complaints are not on file with USDA" should not be included within class definition due to anticipated problems of proof; further stating that consideration of defendant's objection would constitute improper consideration of the merits).  Plaintiffs also distinguished *In Re PPA Prods. Liab. Litig.*, 214 F.R.D. 614 (W.D. Wash. 2003), and other similar cases relied on by DuPont, at the Hearing and at pages 21-23 of Plaintiffs' Reply Memorandum.

2

Plaintiffs' proposed classes satisfy the ascertainability requirement, which is not designed to be a particularly stringent test. *See* Plaintiffs' Reply at 10-11. The definition need only be precise enough so that it is administratively feasible for the court to ascertain whether an individual is a member. *Id. Plaintiffs' class definitions state objective criteria by which putative class members will qualify for membership in one of the three subclasses*, making the determination of class membership administratively feasible.[4]

    **2.    <u>Plaintiffs Adequately Represent The Proposed Classes.</u>**

*Each jurisdiction has an adequate class representative* for at least one of the putative subclasses. *See* Amended Exhibit 61A, attached as Exhibit C. *A class representative need only be a member of one subclass to adequately represent the class. See Carpe v. Aquila, Inc.*, 224 F.R.D. 454 (W.D. Mo. 2004).[5] Thus, in each jurisdiction, there need only be one representative in one of the three sub-class definitions. Each representative is proper because regardless of which sub-class a particular representative is in, that representative possesses the same interests and suffers the same injury as the members of any other sub-class. Accordingly, that representative is adequate for the entire class in that jurisdiction.

Alternatively, should the Court elect to certify some, but not all, of the proposed subclasses, or to modify the class definitions so that a jurisdiction(s) is without a class representative, Plaintiffs should then be given leave to amend to add a representative. For example, in *Howe v. Varity Corp.,* 896 F.2d 1107 (8th Cir. 1990), after creating two subclasses, the court recognized that each sub-class might not be adequately represented and noted that its

---

[4] A sample claim form, attached as Exhibit E, demonstrates how class members of Sub-Class 1 or 2 could be identified in a straightforward and administratively feasible manner.

[5] *See also In re Dreyfus Aggressive Growth Mutual Fund Litig.,* 20000 WL 1357509 at *3 (S.D.N.Y. 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities."); *In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y. 2003) (where "claims arise from the same course of conduct" and "involves the same defendants, legal theories and factual allegations," the adequacy and typicality requirements for class certification have been satisfied).

3

redefinition of the class "may require substitution of suitable class representatives." *Id.* at 1111 (*citing Kremens v. Bartley,* 431 U.S. 119 (1977) (remanding for reconsideration of class definition and substitution of class representatives where named plaintiffs' claims became moot)).[6]

### a. Plaintiffs' Relationships Do Not Render Them Inadequate.

DuPont argued that "[r]elationships with counsel render proposed representatives inadequate", relying primarily on *Susman v. Lincoln America Corp.*, 561 F. 2d 86 (7th Cir. 1977). [DuPont Brief at 43.] "The *Susman* court declined, however, to adopt a per se approach and held instead that 'a court must examine the circumstances of each case.'" *Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J. 1982) (finding nephew of class counsel adequate plaintiff) (*citing Susman*, 561 F. 2d at 93-95). Further contrary to DuPont's assertion, "courts routinely observe [that] a named plaintiff will not be disqualified simply because of a close or familial relationship with one of the attorneys representing the class." *In re Cardizem Antitrust Litig.*, 200 F.R.D. 326, 337 (E.D. Mich. 2001)[7]. As Plaintiffs emphasized at the Hearing, "there must be some *evidence* that the relationship at issue is likely to create a conflict of interest or otherwise compromise the ability to vigorously prosecute the action on behalf of the class." *In re Cardizem*, 200 F.R.D. at 337.[8] DuPont failed to provide *any* evidence to suggest the

---

[6] *See also Sueoka v. United States*, 101 Fed. Appx. 649, * * 3 (9th Cir. 2004) (where some sub-classes were without adequate representation and adequate representatives existed, "leave to amend should be granted to add named plaintiffs who are both typical and can adequately represent each of those subclasses."); *Burka v. New York City Transit Authority,* 110 F.R.D. 595 (S.D.N.Y. 1986) (conflict amongst members of plaintiffs' five proposed sub-classes was resolved by creating sub-classes and allowing plaintiffs to add subclass representatives); *see also* cases cited at 10-11 of Plaintiffs' Reply Brief.

[7] Citing *Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J. 1982) (observing that "it would seem a bit anomalous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate claim").

[8] *See also In re Greenwich Pharm. Sec. Litig.*, 1993 WL 436031, at *2 (E.D. Pa. 1993) (holding plaintiff adequate even though son was attorney in firm representing plaintiffs, where there was no indication that plaintiff "relied or will heavily rely on his son nor that he stands to benefit from fees his son may receive"); *Irvin E. Schernmer Trust by Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 337-38 (D. Minn. 1987) (finding defendants failed to present evidence that close family relationship would create conflict of interest); *Sommers v. Abraham Lincoln Federal*

likelihood of a conflict of interest. Like *Susman*, the other cases cited by DuPont turn on facts simply not present here.[9]

### b. **Plaintiffs' Knowledge Does Not Render Them Inadequate.**

DuPont's objections regarding certain Plaintiffs' alleged lack of knowledge of issues in the case are unavailing. "[T]here is no requirement under Rule 23 that the named plaintiffs be able to understand the intricacies of the litigation or their role in it." *Twyman v. Rockville Housing Authority*, 99 F.R.D. 314, 323 (D. Md. 1983) (finding plaintiff adequate though she did not "completely understand all of the legal claims being brought on behalf of the class.").[10] Class representatives need only be conscientious and understand the basic facts underlying their claims. *See Carbajal v. Capital One, F.S.B.*, 219 F.R.D. 437, 442 (N.D. Ill. 2004). Plaintiffs have asserted that the class representatives meet that standard. DuPont has made no showing

---

*Savings & L. Ass'n*, 66 F.R.D. 581, 589 (E.D. Pa. 1975) ("whatever inadequacies may have existed [as a result of plaintiffs' employment with class counsel] have been cured by the intervention of numerous other named plaintiffs. Nothing in the record demonstrates that the intervenors were brought into this suit unethically or are mere straw figures for plaintiffs' counsel.").

[9] In *London v. Wal-Mart Stores, Inc.*, 340 F. 3d 1246, 1253 (11th Cir. 2003), the named plaintiff shared a "friendship and former business relationship" with class counsel, who "made a large deposit with London after [class counsel] Ader had obtained a settlement in a very similar suit." *Id.* "After filing the present lawsuit as counsel for London, Ader moved his brokerage account so that London was no longer his stockbroker." *Id.* In *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 328 (N.D. Ill. 1993), the class representative had been represented by class counsel in previous class actions and had served as co-counsel in at least 42 other cases, including 25 currently pending cases. *Id.* Additionally, Jaroslawicz had received at least $167,929 in attorneys' fees from the 17 cases in which he had served as co-counsel with class counsel, and defendants therefore argued that a "de facto" partnership existed. *Id.* In the instant case, no such business relationships exist between class representatives and class counsel and there is no evidence to suggest the existence of a conflict of interest.

[10] *See also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 372-73 (1966) (certification not defeated even though plaintiff revealed "that she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct, and in fact that in signing the verification she had merely relied on what her son-in-law had explained to her about the facts in the case."); *Deary v. Guardian Loan Company, Inc.*, 534 F. Supp. 1178, 1190 (S.D.N.Y. 1982) (finding plaintiffs adequate even though they "demonstrated a somewhat limited understanding of the details of th[e] litigation"); *Carbajal v. Capital One, F.S.B.*, 219 F.R.D. 437, 442 (N.D. Ill. 2004) ("[W]hat [defendants] characterize as confusion about legal matters is more likely attributable to plaintiffs' lack of sophistication and relative unfamiliarity with the inner workings of federal civil litigation."); *Morris v. Transouth Financial Corp.*, 175 F.R.D. 694 (M.D. Ala. 1997) ("[T]he plaintiff need not be intimately familiar with every factual and legal aspect of the case. He may rely on counsel to investigate and litigate the case and his reliance does not make him an inadequate representative."); *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 141 (D.N.J.1984) (in evaluating a named plaintiff's knowledge, one cannot just pick out questions about the case that the representative answered incorrectly, his or her entire deposition testimony must be considered).

5

otherwise; particularly so when the cases are disaggregated and the Court looks past DuPont's "cherry-picking" of selected testimony (which, in any event, is addressed in Ex. A).

### c. The Rights Of Absent Class Members Are Preserved.

DuPont incorrectly argues that Plaintiffs have abandoned medical monitoring claims to the prejudice of absent class members. Plaintiffs have not abandoned any claims that could have been brought, nor will a judgment on those claims prejudice any of the potential claims of absent class members. Plaintiffs allege consumer fraud claims that can be pursued on a class wide basis without sacrificing the ability of absent class members to pursue claims such as medical monitoring, product liability, and personal injury.[11]

DuPont's assertions are also in conflict with U.S. Supreme Court precedent in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 880 (1984). *Cooper* instructs that claims that are most efficiently pursued as a class action should be pursued as such while individual claims may be pursued separately without prejudice. *Id.* at 880. This is exactly what Plaintiffs have done. *See also Bentley v. Honeywell International Inc.,* 223 F.R.D. 471 (S.D. Ohio 2004) ("[A] class action judgment . . . binds the class members as to matters actually litigated *but does not resolve any claim based on individual circumstances that was not addressed in the class action*."). Courts considering the purported risk of *res judicata* from consumer fraud class actions on subsequent personal injury, medical monitoring, and product liability claims determine the risk does not exist. *See*, *e.g.*, *Gasperani v. Metabolife International, Inc.*, 2000 WL 33365948 (E.D. Mich. 2000) (rejecting *res judicata* argument that class action claim for misrepresentation of danger associated with diet supplement would jeopardize personal injury

---

[11] Courts have noted that medical monitoring claims do not lend themselves to class-wide disposition as part of consumer fraud cases because of individualized issues and because money damages are also being requested. *In Re St. Jude Medical, Inc.,* 425 F.3d 1116 (8th Cir. 2005). Had Plaintiffs pressed the medical monitoring claim, however, DuPont surely would have argued that such claims cannot be certified and should instead be pursued individually.

claims of absent class members).[12]

Courts analyzing DuPont's claim splitting argument have seen defendants' "concern" for and desire to "protect" the absent class members for what it really is – a ploy to avoid liability. *See Eggleston v. Chicago Journeyman Plumbers Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).[13] DuPont has not identified a single case holding that a consumer class action alleging fraudulent marketing created a *res judicata* risk regarding personal injury, medical monitoring or product liability claims arising from the consumers' *use* of the product. DuPont's "authority" is distinguishable because those class representatives either split property damage and personal injury claims, *MTBE Products Liability Litigation,* 209 F.R.D. 323, 339 (S.D.N.Y. 2002); or attempted to certify certain claims premised on use of the product while splitting off and abandoning others, *Thompson v. American Tobacco Company, Inc.,* 189 F.R.D. 544, 550-51 (D. Minn. 1999) (judgment on class claims for medical monitoring and smoking cessation program created *res judicata* risk as to personal injury claims not pursued).

At the Hearing DuPont argued for the first time that the risk of collateral estoppel defeats the adequacy test.[14] DuPont's only example of a common issue to be proven in both the class claims and individual claims was establishing proof of general causation that fumes and particulate matter from heated NSCC can cause a physical illness. However, DuPont has *admitted* this fact in its Answer and in discovery. Indeed, far from doing harm to the class members, this class litigation has concretely benefited any individual claims by establishing

---

[12] *See also Schwab v. Phillip Morris USA, Inc.*, 449 F. Supp.2d 992, 1076-77 (E.D.N.Y. 2006) (rejecting Defendant's *res judicata* argument because RICO class action claim for fraudulent marketing of light cigarettes requires different proof of essential facts than a personal injury action), *rev'd on other grounds*, 522 F. 3d 215.

[13] *Eggleston* noted that "it is often the defendant, preferring not be successfully sued by anyone, who supposedly undertakes to assist the Court in determining whether a putative class should be certified. When it comes, for instance, to determining whether the representative parties will fairly and adequately protect the interest of the class, . . . it is a bit like permitting a fox, although with pious countenance, to take charge of the chickenhouse." *Id.* at 895.

[14] *Res judicata* is claim preclusion. Collateral estoppel is issue preclusion.

proof of general causation. DuPont's collateral estoppel argument is without merit.

Thus, the class representatives are adequate because they have pursued all commercial claims relating to DuPont's fraudulent concealment in the sale and marketing of its NSCC, have not compromised or prejudiced any individual claims relating to injuries from products containing DuPont's NSCC, and in fact have advanced those claims by establishing DuPont's admitted knowledge of polymer fume fever.

### D.     The Statute Of Limitations Does Not Defeat Certification.

DuPont's statute of limitations argument is not an obstacle to class certification. *See* Plaintiffs' Reply at 23-26. Indeed, DuPont failed to present any contrary case law prior to the Hearing. *Id.* at 24. This is because the overwhelming authority on this issue holds that statute of limitations issues do not preclude class certification. *Id.* at 23-24.

At the Hearing, in an effort to support its erroneous argument, DuPont discussed *Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150 (S.D. Iowa 2001), a "smokers' case." This Court concluded that the statute began to run when a plaintiff "was placed on inquiry notice that he may have lung cancer." This required individual evaluations of each class member's health and medical history,[15] an inquiry which is clearly not required in the instant case. In another inapposite case cited at the Hearing, *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683 (D. Kansas 2007), individual issues predominated because determining when each class member's claim arose involved highly individualized and unique facts about each member's transaction, including what each member was told before, during and after the closing, what documents they had access to, and what those documents contained.

The individual issues in *Mahoney* and *Doll* are not present here. There are no individual

---

[15] Significantly, *Mahoney* also notes that plaintiffs' varied levels of exposure to warnings from the media, health care professionals and cigarette warning labels regarding the dangers associated with smoking required individualized inquiries as to when each plaintiff was placed on inquiry notice as to such dangers.

8

issues regarding what each class member knew, or when. Rather, the instant case concerns DuPont's classwide omissions[16] for which the statute of limitations began to run when a *reasonable person* would have discovered the basis for her claim.[17] The commencement of the statute of limitations is determined by an objective (reasonable person) standard that is readily amenable to class treatment. *See* Plaintiffs' Reply at pp. 23-26.[18] Moreover, as explained at the Hearing, DuPont's concealment never ceased.

### E.  Citations To The Deposition Of DuPont's Expert Have Been Corrected.

Plaintiffs' briefs inadvertently cited to the reporter's draft of Mr. Mazis's transcript. An errata sheet reflecting the correct citations for the Mazis deposition is attached as Exhibit H.

---

[16] The materiality of DuPont's omission regarding potential adverse health effects is evidenced by the testimony of Plaintiffs who were asked about their knowledge of DuPont non-stick coated cookware at the time of purchase. Nearly all Plaintiffs responded as follows: "Had I known about the risk of adverse health effects from exposure to heated non-stick cookware, I would not have purchased it [or words to this effect]." *See* chart of Plaintiffs' Testimony, attached as Exhibit F. This evidence conforms with the materiality standard expressed by the Federal Trade Commission relative to the concealment of information having to do with human health. DuPont deprived consumers of the opportunity to make a fully informed decision when they purchased DuPont NSCC.

[17] DuPont takes irreconcilable positions. On one hand, it contends that heated NSCC poses no safety risk to consumers. However, it also asserts that everyone has known of the safety risks associated with NSCC since the 1950s. How does DuPont make this leap? It retained economist Edward Snyder at a rate of $775.00 per hour. Snyder Deposition, at 121. Snyder hired assistants who were paid more than $407,000.00 by DuPont to perform a literature search and to create demonstrative evidence. *Id.* at 125.

One article among the hundreds advanced by Snyder, and the only one used by DuPont to suggest that a warning was not necessary, was a 1962 story in Newsweek, entitled "Plastics: Into the Fire?" [DuPont Bates # 038-0000914-915, produced within Composite Ex. 5 to the 6/23/08 Snyder Report] DuPont claims the publication of the article more than forty years ago put consumers on notice of the risks of polymer fume fever from using NSCC. However, the article says no such thing. Its author characterized the risk of polymer fume fever as a "damaging *rumor*" deserving of a retraction, and mentioned DuPont's "fruitless efforts to scotch it." This language is not an acknowledgement on DuPont's part equivalent to a warning to consumers. Nor was it proper for DuPont's counsel to proffer this article to the Court as proof that the consuming public has known about polymer fume fever for decades. A copy of the referenced Newsweek article is attached as Exhibit G.

[18] *See also East Maine Baptist Church v. Union Planters Bank, N.A.,* 244 F.R.D. 538 (E.D. Mo. 2007) (where plaintiffs' theory for tolling the statute of limitations relied on uniform conduct of defendant, it could "be proved on a classwide basis, because it pertains to the uniform actions the [defendant] took with respect to the plaintiffs' class as a whole"); *Dekro v. Stern Brothers & Co.*, 540 F. Supp. 406, 416 (W.D. Mo. 1982) (defendant's motion to decertify class on statute of limitations issues denied where "plaintiffs have alleged that defendant fraudulently concealed" their cause of action and "[i]f plaintiffs can prove that allegation, then the statute of limitations is tolled."); *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 698-99 (D. Minn. 1995) ("individual questions that arise in proving fraudulent concealment will not operate to prohibit class certification" and "[i]ssues relating to Defendant's alleged concealment will be common to the class"); *Lamb v. United Security Life Co.*, 59 F.R.D. 25, 33-34 (S.D. Iowa 1972) (even where plaintiffs conceded that determination of when plaintiffs discovered or should have discovered the fraud complained of had to be determined on an individual basis, statute of limitations issue did not preclude class certification).

**F.     The Proposed Classes Can Be Certified Under Pennsylvania Law.**

Pennsylvania's consumer protection statute was discussed extensively during the Hearing. The Pennsylvania proposed class is amenable to class treatment. A discussion of Pennsylvania's consumer protection statute is included in Ex. A to this filing.

**G.     This Case Is Not Lawyer-Driven.**

Contrary to DuPont's disparaging remarks at the Hearing, Plaintiffs have a genuine interest in seeing that injunctive relief is granted, compelling DuPont to disclose its knowledge about the health effects of polymer fume fever, obtaining relief that would establish a research fund as requested in Plaintiffs' complaints, and all other relief prayed for. Nor is there any *evidence* that Plaintiffs' counsel encountered difficulty finding Plaintiffs who would represent consumers who purchased DuPont NSCC.

DuPont's suggestion that this case is lawyer-driven is beyond arrogant. Having concealed from the consuming public the deleterious effects of its NSCC for approximately *five decades* in order to make rapacious profits, DuPont now questions the motives of those who want to take it to task for its fraud? How insulting to Plaintiffs, their counsel, and to this Court.[19]

The truth -- a concept which repeatedly seems to escape DuPont -- is that people like Plaintiffs herein do not bring cases for windfall compensation. These people become class action plaintiffs because they do not like to have facts concealed from them, want to know what risks they face when buying a product, and want to ensure that corrective action is taken. As for their lawyers, one of the things that drew us to the legal profession is the ability to use our skills to bring tortfeasors to justice and to do things which benefit large portions of the public.

---

[19] Indeed, why would a person seeking a limited monetary recovery agree to devote their time to interviews, interrogatories, Fact Sheets, depositions and other discovery? The answer lies in their desire to disclose the potential risks and adverse health consequences of inhaling heated DuPont NSCC, and to have these risks evaluated in places other than DuPont corporate headquarters or its in-house [Haskell] laboratory.

Respectfully submitted,

*On behalf of counsel in all transferor states:*

KLUGER, PERETZ, KAPLAN & BERLIN, P.L.
*Counsel for Plaintiffs*
Alan J. Kluger, Esq.
Steve I. Silverman, Esq.
Stuart R. Silver, Esq.
201 South Biscayne Boulevard, 17th Floor
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428


By:    /s/ Steve I. Silverman
        Steve I. Silverman, Esq.

-and-

WANDRO & BAER, P.C.
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone:   (515) 281-1475
Facsimile:    (515) 281-1474


By:  /s/ Kimberley K. Baer
Kimberley K. Baer, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via Electronic Mail and U.S. Mail on this  4th  day of November, 2008, to:

Adam L. Hoeflich, Esq.
Bartlit Beck Herman Palenchar
   & Scott LLP
54 W. Hubbard Street
Chicago, IL  60610
312 494 4400
312 494 4440 (fax)
adam.hoeflich@bartlit-beck.com
*Counsel for Defendant, E.I. DuPont de Nemours & Company*

Robert Fanter, Esq.
Whitfield & Eddy
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309
515 288 6041
246 1474 (fax)
fanter@whitfieldlaw.com
*Counsel for Defendant, E.I. DuPont de Nemours & Company*

John Sherk, Esq.
Shook Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO  64108
jsherk@shb.com
*Counsel for Defendant, E.I. DuPont de Nemours & Company*

By:   */s/*  Steve I. Silverman
     Steve I. Silverman, Esq.